2012-1024 Mr. Dutro. Good morning Your Honor. May it please the court, my name is Jeremy Dutro and I represent the appellant VITA MIX CORP. This appeal from the Board of Patent Appeals turns on plain constructional loans. There is no genuine factual dispute between VITA MIX and the Patent and Trademark Office concerning the structure of the blending containers disclosed in Ash and Houser, the two primary references VITA MIX identified. Here there are three incorrect claims instructions by the examiner left uncorrected by the Board. This morning I would like to address two of them, Corners Formed by the Four Sidewalls and Truncated Wall. Turning to the first one, Corners Formed by the Four Sidewalls, claims 1 through 10 of the 842 patent each recite this limitation. The Board incorrectly narrowed that language to only those corners formed between two sidewalls. That is not consistent with the specification. Indeed, the Board itself in its decision, if you turn to page 810 of the appendix, notes the 842 patent specification does not explicitly state that the corners formed are only between two sidewalls. Indeed, figure 11, the figure that is in the 842 patent, plainly shows that the four sidewalls form five corners. Even more critical here though is that the inventor acted as his own lexicographer. He defined what corners formed by the four sidewalls are. The 842 patent is a child patent. It is a continuation of the parent 117 patent. In both patents, referring to figure 11, the patentee said that the truncated wall, wall 135, is closer to the central axis than the corners formed by the four sidewalls. Now, a person of ordinary skill in the art intending to interpret the claims and what they mean would certainly look at the 117 specification as part of the intrinsic record. And what does the patent holder tell us? He defined what the corners formed by the four sidewalls. He tells us what those reference corners are. He says, yes, they include the three corners formed between two sidewalls, but they also include the two corners formed by the sidewalls with the truncated wall. The inventor is bound by his definition. So too is the PTO. Now, claim differentiation is yet another basis that underscores why the board got this wrong. Unlike claims 1 and 9, the two independent claims that broadly recite corners formed by the four sidewalls, claim 11 is narrower. Claim 11 is limited to – it defines the reference corner as a corner formed where the other two of the four sidewalls meet. In other words, claim 11 is narrow. It limits the reference corners to only those corners formed between two sidewalls. As this court has said, two independent claims are presumed to have different scope with different words and phrases. Why can't we interpret the difference between claims 9 and 11 as being that 9 deals with whether the distance comparison is between the truncated wall and all the corners, whereas claim 11 is the truncated wall and only one corner? Because it's defining the reference. A difference, right? And that's a distinction between none. It is a distinction, Your Honor. I think that's what I'm getting at here, that the corners formed by the four sidewalls, the reference corners for claim 9, broadly includes all of those corners as reference corners. And so the truncated wall is positioned closer than all of those. And you're correct. In claim 9, it is limiting that reference corner to just the corner formed between two sidewalls. It is narrowing the exact reference corner to a single corner. Claim 9, like claim 1, is broader. It's all of the corners formed by the four sidewalls comprised of the reference corners, just as the inventor said they do in the 117 specification. Now, going back to the Patent Board's decision here, as I noted, they said that – and they agree, they acknowledge – that the patent does not explicitly state that the corners formed are only between two sidewalls. But they nevertheless held otherwise. And why? Their decision, if you look at it, is three sentences on page 810 here. It's really just conclusion without much reasoning or rationale. What is the reason? What do they cite to in the patent specification for why to narrow it to only those corners formed between two sidewalls? They cite the patent to use language in the disclosure of the invention. That the wall, the truncated wall 135, is closer to the central axis than the corners formed by the four sidewalls. Their conclusion doesn't flow, however. Now, there's no rationale, as I mentioned, so it's unclear as to whether the board just thought, looking at figure 11, that somehow the 135 truncated wall is further from the central axis than the corners formed by the sidewalls with that truncated wall. Of course, the board, if that was their assumption, got the geometry wrong. If you turn to page 7 of our reply brief, Vitamix shows basic geometry here. Pythagorean theorem. Any point along that truncated wall 135, looking at figure 11, is going to be closer to the central axis than those three corners formed between two sidewalls, as well as the two corners formed by the sidewalls with the truncated wall. A person of ordinary skill in the art, applying the broadest reasonable interpretation, knowing what the inventor said is the definition of those reference corners, corners formed by the four sidewalls. Looking at figure 11, and armed with basic geometry, would understand that corners formed by the four sidewalls is not just limited to corners formed between two sidewalls, but also comprises, includes, corners formed by at least one sidewall. Your Honor, I would like to turn your attention to the truncated wall limitation. Every claim in the 842 requires a truncated wall. The examiner here incorrectly construed that limitation to mean a wall that truncates a corner of a blender as compared to the other corners of the blender. We submit that construction is not supported by the specification. Just as with the reference corners, the inventor again acted as his own lexicographer. He defined, he told us what the truncated wall is. It is a wall that truncates, in essence, the typical corner that would otherwise be formed between two sidewalls. He didn't talk about comparing it to the other corners. He doesn't say that it's typical of the jar. All he says is his definition. It merely is a corner one would expect to form between these two adjacent sidewalls if you remove the truncated wall. And the intrinsic record, again, supports by the misposition and undermines the examiner's. Here, the inventor disclosed in the written embodiment of his, or in the written description of his invention, that the four sidewalls may be arranged in a generally rectangular tapered shape. Sure, the preferred embodiment may be that they're rectangular, but the may is an important clue. It shows that the inventor contemplated that this invention also includes non-rectangular configuration. And in a non-rectangular configuration, the corner that's been truncated by the truncated wall may not be typical of the jar. In fact, it may not be the same as the other corners of the jar. Again, further undermining the board or the examiner's construction here. Now, as I mentioned, claim construction is absolutely critical. It is what the board relied upon in denying Vitamix's invalidity contentions. If you adopt Vitamix's construction of corners formed by the four sidewall and truncated wall, or should I say the inventor's definition of that, as disclosed in the patents, I submit that claims 9 and 10 are anticipated by Asch and Hauser, and I'm not sure there's any dispute about that. Now, turning to obviousness, there is no dispute that claims 1 through 8 each require a handle limitation. There is no dispute that the primary references that Vitamix identified, that the Asch and Hauser, those blending containers, do not disclose a handle limitation. And there is no dispute that Vitamix identified the three secondary references, the Blendtec blending jar, grind, and probe, solely for the handle limitations. It would have been, not of the examiner, the board, or the director in his degree, dispute Vitamix's position, that it would have been obvious to a person of ordinary skill in the art to just add the handle and these secondary references to the blending containers disclosed in Asch and Hauser. So again, obviousness, like anticipation, turns on claim construction. Accepting Vitamix's position as to corners formed by the four sidewalls and the truncated wall limitation, Asch or Hauser, in combination with any one of the three secondary references, unquestionably invalidates claims 1 through 8 as obvious. Your Honor, I would like to reserve the balance of time, so I don't know if there's any further questions.  May I please report? The board correctly construed the claim language consistent with the specification. As Judge Prost, you recognized, the specification here is all about, and this invention is all about, a blending jar geometry that is asymmetric and that results in this effect of reducing cavitation. Vitamix... Of course, cavitation isn't in the claim, is it? No, it's not. We're looking at the structural aspects of the claim. No, it's not, but if you, one of skill in the art were to look at the specification in its entirety, you begin with column 2 where it talks about the problem of cavitation, and in the summary of the invention, it then talks about the blending jar geometry and talks about the blending jar geometry that is designed to deal with this cavitation problem, and then in column 6 and 7, which are the sections that deal with the blending jar geometry, it discusses the four sidewalls, the fifth truncated wall, and then again ties it at the end, it goes accordingly, at the beginning of column 7, it talks about accordingly, the vortex then is shifted off center from the blending, the axis of the blade. So, taken together as a whole, the specification is very clear that the whole blending jar geometry is designed to be asymmetrical and to create this shift in the fluid vortex from the axis of the blade. And as you recognize too, and that is the problem that I think, for Vitamix, this problem is they're trying to shoehorn the Hauser and Ash references, which as you recognize do not, are symmetrical, and in fact have eight walls, into this invention and these claims, which are clearly not directed to that. What about your friend's point that the claim language says comprising, the specification and the preferred embodiment says made, all of those terms under the board of construction as the broadest possible reading suggest a broader reading, I mean that's what I understand what the points are, what's your response? Well, the claim language does say comprising, but it's also, it is not open-ended, it talks about four planar side walls and a fifth truncated wall, which is what is described and disclosed in this specification, and more specifically, when you look at this last term and try to construe that, where in the fifth truncated wall is positioned closer to the corners, positioned closer to the axis than the corners formed by the side wall, when you look at the specification in columns six and seven, it becomes readily apparent that the meaning of those terms are directed to shifting that vortex off center, and specifically if we break this down as the board did, and we look to first the meaning of the corners formed by the four side walls, there are three things, three arguments I think that support it. One is the claim language itself does not say corners formed by the walls of the blending jar, or corners formed by at least one side wall, or corners formed between side wall and a truncated wall, it says corners formed by the four side wall. Then when you look at column six and seven in two places when it refers to the truncated wall and its distance to the axis as compared to the four side walls, it says right after there, walls 132, 134, 136, and 138, it never says 135, and that's both at the bottom of column six and then again at the top of column seven when it talks about the corners formed by walls, 132, 134, 136, and 138. And lastly, when it gives even an example of the distance, it talks about 3.5 inches, and clearly if it was contemplating these other corners that are formed between the side wall and the truncated wall, those would be a different distance. So there's at least three points there that support that construction the board gave to that term. With respect to the other term, position closer to the axis, again I can point to three pieces of evidence in the specification that support that. One is first at the top of column seven, it expressively says at the height of the blade. Secondly, in column six and more generally as you look to the description, which refers by the way to figures 10 to 13 and only figure 11 is really the relevant figure, figure 11 is a horizontal cross section of the blending jar. So logically the way to look at the distances and to make those comparisons is in a horizontal plane of the blending jar and only in fact if you do that would you get the result that is described which is that the truncated wall is closer to the axis than the other walls. In other words, if you were to measure that distance on the truncated wall up at the top, it would not be closer than the other side walls. And then lastly as I have discussed, when you look at it in context, which is every single time in the specification when it discusses the blending jar geometry, it connects that to this function that it has, this inherent function that this blending jar geometry has, which is to shift that fluid vortex, fluid flow vortex off center from the blade axis. If there are any additional questions? Any questions? Then I will cede my time. Please report. It's a pleasure to be here. I'm Grant Foster and I represent the patent owner KTEC in this appeal. I'd like to first address this issue. The claim construction of course is reviewed de novo but this is an argument that you will not find anywhere below before the board in terms of the central re-exam unit or the original examiner. I've got to clear up a misperception. They state in their brief that we excise this language from the 842 patent. A careful review of the file history of the 117 patent will reveal that just before the 117 patent was allowed, the examiner required by way of an examiner amendment the insertion of that language as he states for clarity to support a few of the dependent claims. He later states that this amendment is clearly supported by the drawings and the amendment is not being made for purposes of patentability. It was simply added in those other claims for the 117 patent but it's not before this court. This is a brand new argument and I have to say that six years of litigation with all of the incentive of the millions of dollars spent, it's remarkable that for the first time this is when we get to hear this. But nevertheless, what is stated in the 117 patent is in no way inconsistent with what we're dealing with here. There are a couple of other questions that were asked that I'd like to address.  It's certainly not in the claims but a person of ordinary skill in the art reviewing the 842 patent specification will use that functional description and specification as a barometer to determine if the specification and the claims, the limitations of the claims are being reviewed so that they receive their broadest reasonable interpretation as interpreted by a person of ordinary skill in the art. If you get no functional benefit, you simply are not being reasonable in a broad way that you discuss the claim limitations. Now one thing that's important, if they're going to cite to the 117 patent and rely on that for purposes of the way the claims can be construed, on pages 22 and 23 of our brief, we talk about what was actually disclaimed during prosecution. It's the Derwinter reference where corners never intersected and we used that argument to distinguish over Derwinter. If we surrendered that subject matter in the 117 patent, the same should apply to Ashe and to Hauser. If indeed one were to consider those to be truncated walls in the corners, then the side walls would never meet to form corners which was the basis of the board's decision below. What about the word comprising? Judge Prost indicated that that was of concern to the court. I'd like to bring to the attention to the court the In Re Succo Surface Inc. case which is found at 603 F 3D 1255 where they talk about you can't use the word comprising to just open-endedly and unreasonably broaden the claim limitation. We think that this court's precedent applies in this particular situation. Stepping back, there are a number of things that are clearly and unquestionably resolved. I would encourage this court to look at the specification. It's the bedrock of claim construction as we know. It's the safe harbor. Look at column 6 line 58 to column 7 line 14 and every question that's been appealed can be answered. The meaning of the fifth truncated wall. It brought in the word typical. The fifth truncated wall would truncate what otherwise would be a typical corner. It brings in corners formed by the four side walls. It explains, they said that there's no comparison requirement. It talks about typical. It talks about as compared to the corners, the fifth truncated wall. And then later on the next page with the distances, it talks about in contrast. The fifth truncated wall in contrast to the corners. There's clearly a comparison. My time is over. I appreciate the opportunity to be before this court today. Thank you very much. Thank you. Thank you, your honor. Just a couple of points. The first being the truncated wall element. It is comprising. It is open-ended. The inventor does recite four, four side walls, but says a fifth truncated wall. Doesn't preclude a sixth, a seventh, an eighth truncated wall. And a person with ordinary skill in the art would understand in Ashe, by the way, your honor, turning to page A304 of the appendix. Ashe is specifically addressed to the cavitation problem in column one. In column two, it says the present invention overcomes the disadvantages discussed above. One of those disadvantages was cavitation. And on column six on A306, Ashe also discloses that it is because of the many faceted surfaces, the structure of its container, that addressed the cavitation problem. So your honor, a person with ordinary skill in the art, given the open-ended claim language, given the fact that the functional limitation is not in there, would nevertheless understand that the prior art, Ashe, addresses the situation and that the claims do not preclude a sixth, a seventh, or an eighth truncated wall. Corners formed by the four sidewalls. Again, the inventor defines what they are. He tells us it's not just limited to the corners formed between two sidewalls. He says, look at figure 11. It comprises five corners. The corners formed between two sidewalls and also the corners formed by the sidewalls with the truncated wall. So again, your honor, I submit, adopting the inventor's own definition, the broadest reasonable interpretation is submitted by Vitamix for corners formed by the four sidewalls and the truncated wall. Ashe and Hauser anticipate claims 9 and 10, and in combination with any one of the handles shown in Grimes, Probe, or the Blendtec Blended Container, render claims 1 through 8 invalid as obvious. Unless Ms. Kammerer has any further questions, I have nothing further to add. Thank you. Thank you, Mr. Deutscher. If not, sir, your case is taken under submission.